## No. 17,448.

PAUL W. BENNETT *v.* ROY EMEL HALL, ET AL.
(290 P. [2d] 241)

Decided October 24, 1955. Rehearing denied December 12, 1955.

Mr. L. A. HELLERSTEIN, Mr. R. J. BERNICK, Mr. JOSEPH N. LILLY, for plaintiff in error.

Mr. LOWELL WHITE, Mr. WALTER A. STEELE, for defendants in error.

*En Banc.*

MR. JUSTICE CLARK delivered the opinion of the Court.

PLAINTIFF in error, as plaintiff in the trial court, sought judgment against defendants by way of damages for personal injuries alleged to have been sustained by him through the negligent operation of defendants' automobile, resulting in a collision with the automobile which plaintiff was driving.

After plaintiff had rested his case, counsel for defendants moved for dismissal of his complaint for the reason and upon the ground that from the evidence it appeared that plaintiff was guilty of negligence which was either the sole cause or the contributing cause of the collision resulting in plaintiff's injuries. Following argument, the trial court granted defendants' motion, in effect saying that, as a matter of law, plaintiff was guilty of contributory negligence, and entered judgment of dismissal accordingly. Plaintiff, coming to this Court by writ of error, contends that the judgment should be reversed for the following reasons:

(1) That no inference that plaintiff was negligent can reasonably be drawn from the evidence; and

(2) Assuming that there was evidence from which it could be inferred that plaintiff was negligent, the trial court should have submitted that question to the jury for decision.

The facts of the case are comparatively simple and without conflict, or without substantial variation in the testimony of plaintiff and the two witnesses who appeared in his behalf. Plaintiff, George Vince, and Albert Dallas, all employes of Gordon Stores, on the afternoon or evening of April 22, 1952, were returning to Denver from a conference of store officials held at Alamosa.

They were using a company automobile which plaintiff was driving, Vince was seated beside him in the front seat while Dallas occupied the back seat. It was broad daylight, the day was clear, the road dry and at the place of the collision hereinafter mentioned, there was nothing whatsoever to obstruct or interfere with the view of the driver or others in the car. No claim is made that the collision occurred as a result of anything other than the negligence of one or the other of the parties involved.

In leaving Alamosa plaintiff proceeded northerly on State Highway 17, a paved road twenty feet wide with four-foot shoulders on either side and generally posted as a through highway. Plaintiff was driving at a speed of approximately fifty miles per hour.

As plaintiff and his companions were approaching the intersection of a road leading off to the right to the town of Hooper, the Hall car was observed to be approaching the highway from the west, or to plaintiff's left. It was moving very slowly, probably not to exceed ten miles per hour, over a rough dirt road leading on to the highway. There seems to be some controversy as to whether this dirt road was a private or public way but whether one or the other does not affect the result in this case. In any event, no stop sign was posted at the point of intersection of said road with the highway. Plaintiff himself testified that he first observed the Hall car when he was about 500 "maybe 600," feet, from the point where said dirt road intersects the highway, and that at that time the Hall car was four or five car lengths from the edge of the pavement, which he later interpreted in feet to mean forty to forty-five feet. The witness said that from that moment on "I didn't take my eyes off of it but watched it as it approached the highway." At a distance of about 300 feet "I asked the fellows who were with me what this fellow was going to do" and admitted that he was concerned with whether Hall was going to stop. At that point he slackened his speed by taking his foot off of the accelerator and may possibly have applied

the brake lightly, reducing the speed to forty or forty-five miles per hour. He was watching the Hall car to see if it would stop, but when about 125 feet away he observed that the Hall car was not going to stop but was moving onto the highway and was crossing right in front of him, he then applied the brakes as quickly and as firmly as he could, turning his car to the right, but was unable to stop it in time to keep it from striking the Hall car. The point of impact occurred approximately at the edge of the oiled pavement on the easterly side of the highway, the left front end of the car plaintiff was driving colliding with the Hall car at a point midway between the front door and front bumper, or approximately in the center of the right front wheel. Plaintiff's car left 36 feet of skid marks on the pavement.

The witness Vince testified that he thought plaintiff saw the Hall car approaching shortly before he did, and he judges the distance from the point where he saw that car to have been about 350 feet, the Hall car then being 30 or 40 feet from the highway. He watched it until he saw it reach the edge of the highway and then remembers nothing further. He also testified that plaintiff removed his foot from the accelerator and slowed their car somewhat and testified about plaintiff's remarks as to "what is this fellow going to do." The witness Dallas says when he first saw the Hall car it was a quarter of a block from the highway moving very slowly, but later was unable to state in feet what he meant by a quarter of a block. He also testified that he watched the Hall car until it approached the edge of the pavement, but from then on, he could see it no longer; that at that time he calculated the car in which he was riding to be possibly one hundred feet away, and that at about seventy feet from the intersection the driver applied the brakes.

There is no question at all that the driver of defendants' car was guilty of negligence, first in not stopping at the edge of highway No. 17 regardless of the fact that there was no stop sign there, and also, undoubtedly, be-

cause he failed to look to his right to observe whether there was approaching traffic, because had he done so, he certainly would have seen plaintiffs car approaching. Assuming the negligence of the driver of defendants' car, was the trial court in error in determining as a matter of law that such was not the sole proximate cause of the collision, but that the plaintiff had contributed to the occurrence of the collision to the extent that he was barred from recovery under the circumstances? We need not concern ourselves further with what the defendant did, but direct our attention to a consideration of the plaintiff's action in order to determine whether he contributed to the collision which resulted in his own injury.

Viewed in the light most favorable to plaintiff, can it be determined from this record, as a matter of law, that failure on the part of plaintiff to use due and proper care, under the circumstances, contributed to the collision? The facts as hereinabove stated are simple, without conflict or substantial variation. Respective counsel in argument highlight certain bits of testimony beyond their true perspective, but we base our comments on the evidence upon what appears in the record. The language of Mr. Justice Knauss in *Werner v. Schrader,* 127 Colo. 523, 529, 258 P. (2d) 766, is entirely appropriate here: "Disputed facts as applied to this case, mean disputes in the evidence, not in the briefs."

 Plaintiff bases his position upon the fact that he was traveling on a preferred thoroughfare, at a speed under the allowable limit, in his proper lane, that he had the right of way and that the collision would not have occurred but for the negligence of the driver of defendants' car. Granting that in all this he is correct, we still have left the question, if, under the particular circumstances of this case, he was under a further duty, failure in the performance of which contributed to the final result. The handicap he must overcome is that the car he was driving struck the one in which defendants were

424

riding. Was he under duty to prevent it so doing? If so, was such reasonably within his power?

We believe it to be axiomatic that the driver of a motor vehicle must at all times so operate it as to maintain reasonable control over it; the degree of control required being dependent upon conditions and circumstances. C.R.S. 1953, 13-4-33, with respect to speed limits, declares: "No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent *under the conditions then existing.*" (Emphasis supplied) and also: "(3) The fact that the speed of a vehicle is lower than the foregoing prima facie limits shall not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, * * * or when special hazard exists with respect to pedestrians or other traffic * * *." Plaintiff, however, insists that he had the right of way and that special hazard existed only because of the negligence of the driver of the other car. "Although having the right of way, the privileged driver must keep his car under reasonable control, and proceed at a lawful rate of speed." Huddy, Enc. of Automobile Law, Ninth Ed., Vol. 3-4, page 280. The right of way of one proceeding in the favored direction is not absolute, but he must exercise all reasonable care and keep his car under control. *Crocker v. Johnston,* 43 N.M. 469, 95 P. (2d) 214, 218.

Where one fails to exercise due care, even though he has the right of way, and his failure in that respect contributes to the occurrence of the collision, he may not successfully maintain an action. *Hicks v. Cramer,* 85 Colo. 409, 277 Pac. 299; *Parker v. Ullom,* 84 Colo. 433, 271 Pac. 187; *Campion v. Eakle,* 79 Colo. 320, 246 Pac. 280.

References are had in the briefs to several cases which pertain to the rather frequently announced rule of duty of automobile drivers not only to look but to see what there is plainly to be seen. So far as plaintiff here is concerned that rule has no application. He was attentive to his driving; he looked; he saw. When several hundred

feet down the road he saw defendants' car slowly approaching the highway. He says so and his witnesses give affirmation. At three hundred feet distance, either from actual visual observation or mental reaction from what he did observe, he became apprehensive as to the intentions of the driver of the other car, and his concern was expressed to his companions in the query: "What is this fellow going to do? He had been and was then driving at the rate of fifty miles per hour. He took his foot off of the accelerator, possibly lightly touched the brake, and slackened speed to not less than forty miles per hour. All this was perhaps commendable, but it was insufficient because the other driver did just what plaintiff was afraid he was going to do, and without stopping, jogged along right out into the road. Plaintiff failed to have his car sufficiently under control to avoid striking defendant's car. Plaintiff's failure to guard against the probability of the eventuality concerning which he expressed apprehension certainly furnishes ample ground for a conclusion that he was contributorily negligent.

■ Assuming that a finding that plaintiff was also negligent and that his failure to use due and proper care under the circumstances finds firm support in the record, should that question have been submitted to the jury for determination? Ordinarily yes, since questions of reasonable care, due regard and prudence are involved, and it would certainly be for the jury should there be conflict in the evidence or where, from the evidence, the minds of reasonable men might properly and conscientiously reach different conclusions. Under the circumstances portrayed by this record is this such a case? We think not.

This is not an instance of sudden realization of danger arising because of negligence of another, where an error in judgment might result from emergency or be forced by necessity of instantaneous action. Plaintiff was apprehensive of the other driver doing exactly the thing he did do, yet he proceeded at a rate of at least forty miles

per hour until he was too close to avoid collision. It is clear that by his own action he created his own emergency, but, because of failure to have his car properly under control, it was then too late to avoid the natural consequences. We think that under the circumstances here presented there is no reasonable basis upon which fair minded men, without prejudice, could reach different conclusions. Such being the situation the issue becomes one of law and was for the trial court to determine. *Patch v. Boman,* 127 Colo. 424, 428, 257 P. (2d) 418. Had the case been submitted to a jury and, for any reason, a contrary verdict returned, it would then have become the duty of this Court to set it aside. *Werner v. Schrader, supra.*

Defendants assign cross-error because of the dismissal by the trial court of their cross-claim against plaintiff. What we have already said disposes of that matter, and it does not merit further discussion. The judgment of the trial court in both orders of dismissal is affirmed.

. MR. JUSTICE MOORE dissents.

MR. CHIEF JUSTICE ALTER and MR. JUSTICE LINDSLEY not participating.