Stanley B. HALL, Appellant,

v.

TEXAS & NEW ORLEANS RY. CO.,
Appellee.

No. 19134.

United States Court of Appeals
Fifth Circuit.

Sept. 13, 1962.

Rehearing Denied Nov. 27, 1962.

John J. Watts, Odessa, Tex., for appellant.

Wyndham K. White, El Paso, Tex., for appellee.

Before RIVES, CAMERON and GEWIN, Circuit Judges.

GEWIN, Circuit Judge.

This suit was brought by Stanley B. Hall, Plaintiff-Appellant, under the Federal Employers' Liability Act arising out of two separate accidents,[1] claiming that while he was an employee of Texas & New Orleans Railway Company, Defendant-Appellee, he received personal injuries as a result of negligence on the part of the Railroad. Hall's allegations of negligence and the Railroad's allegations of Hall's contributory negligence were the issues submitted to the jury. The jury returned a verdict in favor of Hall in the sum of $24,000.00.

Hall is dissatisfied with the amount of damages awarded and on this appeal claims that the damages are inadequate. He contends that prejudicial errors were committed by the trial court in the exclusion of testimony as to future medical expenses; in the admission of evidence; and the argument of counsel for the Railroad to the jury, all of which Hall claims resulted in what he considers to be an inadequate award.

Appellate courts are understandably reluctant to overturn jury verdicts on the ground that they are inadequate or excessive. Bryant v. Mathis, (1960) 107 U.S.App.D.C. 339, 278 F.2d 19. The Supreme Court in Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 53 S.Ct. 252, 254, 77 L.Ed. 439 (1933) states:

"* * * the rule that this Court will not review the action of a federal trial court in granting or denying a motion for a new trial for error of fact has been settled by long and unbroken line of decisions; and has been frequently applied where the ground of the motion was that the damages awarded by the jury were excessive or were inadequate. The rule precludes likewise a review of such action by a circuit court of appeals."

If the trial court committed substantial error in law or in fact, the natural tendency of which would be to reduce the quantum of damages, the judgment should be set aside. The burden of showing such error with resulting prejudicial injury is upon the party attacking the judgment. Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943).

"Point number one" (intended as specification of error) asserted by Hall, is alleged error of the trial court "in excluding the evidence" tendered by him through his witness, Dr. W. V. Ramsey, as to future medical expenses.[2] Without objection, the physician stated that Hall would require hospitalization and nursing care in the future and expressed the opinion that he may require such attention all his life. At one time, the physician indicated that such care would be required within 20 years. Later the physician stated that Hall might require

---

1. It is alleged that on or about May 21, 1958, Hall was standing on the ladder of a railroad car when it collided with other cars on the track causing him serious injuries; and that on October 5, 1959, as a result of injuries received in the prior accident, he missed his footing on a sill step while attempting to board a moving freight car causing him to fall to the ground and sustain further injury.

2. The cases of Woelfle v. Connecticut Mutual Life Ins. Co., (8 Cir., 1939) 103 F.2d 417, and Kelly v. Cordle (8 Cir., 1954) 217 F.2d 757, from the Eighth Circuit, indicate that where objection to certain testimony is sustained and no motion to strike or exclude is made, but the answer remains in the record, an assertion that error was committed in excluding the evidence is without merit. It is entirely likely that jurors would usually accept a ruling of the trial judge in sustaining objection to certain testimony as equivalent to excluding that testimony. In view of the provisions of Rule 46, Federal Rules of Civil Procedure, 28 U.S.C.A., we do not consider a motion to exclude to be necessary.

medical attention in about 2 or 3 years which would continue all of his life.[3] The Court's instructions to the jury fully informed the jury as to future medical expenses and disability.[4] In view of the testimony which remained in the record with respect to such expenses and disability to which no objection was made,

3. The testimony on this aspect of the case is as follows:

"Q. Doctor, do you feel like that this man's condition will grow such that he will in the future require hospitalization and nursing care?

"A. Definitely, yes, sir.

"Q. Within what period of time, Doctor, do you think in the future that Stanley Hall will require hospitalization and nursing care?

"A. I imagine all his life, he is gradually getting worse.

"Q. Sometime within what number of years, Doctor?

"A. Oh, I would say twenty years.

"Q. And, Doctor, what would be the cost, just based generally on your experience, in your opinion, of treating a patient that will ultimately reach his condition, per year?

"A. About three or four thousand dollars a year.

"MR. WHITE: This is not proper—

"MR. WATTS: It is the only way we can show future medical expense.

"MR. WHITE: It is not the proper way.

"THE COURT: The Court will sustain the objection to that question.

"Q. What would be the reasonably fair amount of medical bills that he will in all probability incur in the future per year, Doctor, after he has reached the point where he requires nursing attention?

"A. About three or four thousand dollars.

"MR. WHITE: It is still not the proper way.

"MR. WATTS. We are entitled to show future medical.

"THE COURT: Well, you projected it some twenty years in the future, it is speculative, and the Court sustains the objection.

"Q. When do you believe that in all probability this will begin when he has to undertake this?

"A. About two or three years.

"Q. Two or three years from now?

"A. Yes.

"Q. And you think it will last for a period of how many years?

"A. All his life.

"Q. All his life?

"A. Yes.

"Q. All right sir. Now what do you think in all probability will be the reasonable cost, Doctor, of the care and treatment and hospitalization and nursing care of a man that you believe will reach the condition that you believe that Stanley Hall in all reasonable probability will reach in two or three years?

"MR. WHITE: If the Court please, that still is not the proper measure.

"THE COURT: Objection sustained."

It is also interesting to note that Appellant Hall in his brief makes the following assertion:

"This testimony, as set out in appellant's amended motion for new trial, showed that plaintiff would have a minimum amount of future medical bills in the amount of $3,000.00 per year for his life expectancy of at least 32 years."

4. "In connection with this instruction, you are instructed that should you find in favor of the Plaintiff and allow Plaintiff damages in answer to such questions, then the amount allowed for any decreased ability to work and earn money in the future, if any, and the amount allowed for physical and mental suffering, if any, should be such amount as is the present value thereof, and in determining the present value thereof, you should take into consideration the rate of interest at which money can be safely and securely invested and determine the present value of any amount you may so allow by discounting the same or deducting therefrom annually an amount equal to the rate of interest at which such sum could be safely and securely invested during the period for which you may allow such damages, if any, and make the balance your answer.

"You are also instructed and charged that you may award the Plaintiff such sums of money, if any, for past and future doctor, medical and hospital bills which you find the Plaintiff has sustained or will sustain in the future, if any, on account of his injuries, if any, of May 21, 1958, and his injury, if any, of October 5, 1959, provided you have found that the defendant railroad company negligently brought about either or both of said injuries, if any, but you will limit the amount allowed to such an amount as you find from a preponderance of the evidence would be reasonable and to such an amount as you find from a preponderance of the evidence that it will be reasonably necessary for the Plaintiff to incur in the future, if any." (Tr. Vol. III, pp. 608–9)

and the Court's instructions on the subject, we conclude that Hall was not prejudiced. Error, if any, was harmless. Rule 61, Federal Rules of Civil Procedure.

■ Error is further claimed with respect to the testimony of witness Rogers, who was Hall's foreman, concerning a statement made shortly after the alleged accident of May 21, 1958. The alleged error relates to the following questions and answers:

"Q. And, well what was the nature of your conversation with him, did you get after him or what?

"A. Well, Mr. Hall was slightly lax in his work and I tied into him about it."

Upon objection, the court ordered the jury to disregard the statement of opinion by the foreman. Later the following question and answer were admitted over objection:

"Q. Well, just describe to the jury what you said to him.

"A. Well, I told Mr. Hall in plain English to either get on the job or get off of it."

Hall contends that the testimony of Rogers in answer to the above questions constitutes hearsay and indicates that Hall was guilty of contributory negligence. In view of the fact that the comparative negligence rule applies, it is contended that the answers could have no effect other than to reduce the amount of the verdict.

As to the first question, the court instructed the jury to disregard the answer, and it is our judgment that the court's instruction removed any prejudice, if any was created. Actually, there was no objection to the question, but to the answer. As to the second question

and answer, the witness was subject to cross-examination, and if there was error, we hold that it was not sufficiently prejudicial to require us to overturn a verdict in the amount of $24,000.00 in favor of the Plaintiff, Hall. Rule 61, Federal Rules of Civil Procedure.

The argument of counsel for the Railroad presents the next alleged error. In his closing argument, counsel for the Railroad made the statement that he believed Hall had a 4–F classification and was critical of the fact that Hall's draft records had not been made available during the trial. Railroad counsel further stated that counsel for Hall had been uncooperative in obtaining or in permitting the Railroad to obtain the draft board records. It appears that counsel for the Railroad had intended to obtain the records and prepared a letter authorizing the release of such records, addressed to the secretary of the appropriate draft board, which he requested Hall to sign. Some confusion developed as to whether the letter was ever signed or delivered to counsel for the Railroad. Hall's counsel testified that it had been delivered. Finally, the letter showed up among the exhibits too late to be of any use.

■■ The propriety of argument of counsel must be determined in the light of the facts of the case. Solorio, Administratrix v. Atchison, Topeka & Santa Fe R. R. Co., (10 Cir., 1955) 224 F.2d 544. While we do not approve of the expression of opinions by counsel, it is proper to draw reasonable inferences and deductions from facts and circumstances disclosed by the evidence.

Hall was apparently unable to positively testify as to his draft board classification and whether he was ever classified as 4–F or not.[5] Apparently, there

---

5. "Q. And you don't recall that you were ever classified as 4-F?

"A. No, sir.

"Q. You want to look those over and see if you can think of any others that you had? You were sent down here to Fort Bliss for a physical examination in 1948, weren't you?

"A. I came down here once, but I don't remember getting a classification card back other than this one here.

"Q. Well didn't you come down here in November of 1948?

"A. I don't remember exactly, sir, what time I came down here.

"Q. Well, it was in the Fall, wasn't it?

were charges and counter charges by counsel on both sides with respect to a failure to produce records. Counsel for the Railroad claimed a lack of cooperation by Hall's counsel with respect to draft board records. It also appears that counsel for Hall made some argument about the failure of Railroad counsel to produce pre-employment x-rays.[6]

 Arguments of counsel have to be balanced against each other. An argument which may be objectionable on its face, may be valid if it is retaliatory or in answer to some argument made by opposing counsel.[7] The record in this case does not contain the full arguments of counsel. Only excerpts from the argu-

ment of counsel for the Railroad are in the record where they appear in Hall's motion for a new trial.[8] Considering the nature of the argument involved here, we cannot properly and fairly pass on the argument here complained about without knowing what else was said during the remainder of the arguments on both sides. It may not be necessary in every case to review the full arguments of counsel in order to pass upon a particular segment of an argument for one of the parties. We can conceive of arguments so prejudicial in nature as not to require a full examination of all that was said by counsel. For our decision here, under the facts shown by the record in this

---

"A. Well—

"Q. At the time of the Korean War, along about then?

"A. Oh, no.

"Q. Sir?

"A. No, no. It was during the time that I was working around in Lovington in the oil fields, around Roswell.

"Q. And you don't recall what your draft classification was?

"A. No, I don't.

"Q. You do know what 4-F means, though?

"A. Oh, yes. I have seen others that had them.

"Q. Well, you don't deny to this jury under oath, do you, that you were classified 4-F, do you?

"A. I don't deny having one but I don't recall having one.

"Q. And it is just possible, very possible, that on November 12, 1948, you were classified as 4-F, isn't that right?

"A. Well, to my recollection, I can't.

"Q. I say, it is very possible that that is true, you won't deny that that happened, would you?

"A. Well, no, I can't deny what I don't actually remember or recall.

"Q. But you never did serve in the military service, did you?

"A. No, sir. I was deferred to Marshall, Sears & Smith."

(Tr. Vol. I, pp. 66–7)

6. The following is from the motion for a new trial filed on behalf of Hall:

"MR. WHITE: Now, Mr. Watts, I am sure, and Mr. Irion, made a big commotion about our failure to produce the pre-employment x-rays, and I am very much chagrined that we couldn't." (Tr. Vol. III. P. 644)

7. See various Digests of State and Federal cases under Subject, TRIAL, ☞129.

8. It appears that some question arose or some contention was made that the record did not properly reflect the argument of counsel. It further appears however, that permission was granted to certify oral argument as part of the record. The following order was entered by Judge Thomason:

"On this 19th day of February, 1962, it having been made known to me that there has been a contention filed that the Record as to the argument made by the Honorable Wyndham K. White, of counsel for the Texas & New Orleans Railway Company, has not been certified to and it appearing that said argument as set forth in Plaintiff's Amended Motion For New Trial on Page 644 of the original record is true and correct and, it having been further made known to the Court that upon oral argument in this cause, counsel for the appellant, Stanley B. Hall, was granted leave of the Honorable Fifth Circuit for this certificate to be made by me.

"IT IS, THEREFORE, ORDERED and I do hereby certify that the argument as set forth in Plaintiff's Amended Motion for New Trial, Page 644 of the original record is a true and correct stenographic report of same as same actually occurred and correctly reflects the rulings and actions of the Court thereon."

We have given full consideration to that portion of the oral argument here presented, but all of the oral argument did not reach us as part of the record on appeal.

880

case, we believe the proper rule to apply in the instant case is set forth in Illinois Terminal R. Co. v. Friedman, (C.A. 8, 1954) 210 F.2d 229:

"The assertion that the verdict of the jury was the result of prejudice induced by improper arguments of plaintiff's counsel was, of course, without any merit, since the record did not contain all of the arguments. This Court has repeatedly stated the obvious proposition that, in order to be able to decide whether arguments were both improper and prejudicial, it is necessary to have included in the record the arguments made by counsel on both sides. Chicago & N. W. R. Co. v. Kelly, 8 Cir., 74 F.2d 31, 37; London Guarantee & Accident Co. v. Woelfle, 8 Cir., 83 F.2d 325, 344. While counsel for the defendant has not in his petition for rehearing referred to this question, we prefer to decide it because of our apparent mistake in assuming that the questions which were not argued orally were waived."

As stated in Peresipka v. Elgin, Joliet and Eastern Railway Co., (C.A. 7, 1954) 217 F.2d 182:

"For all we can learn from the record before us, the argument complained of may have been justified by the preceding argument of defendant's counsel. It was the duty of defendant to preserve in the record all matters which might bear upon the errors assigned by it."

See also Metropolitan Life Ins. Co. v. Banion, 10 Cir., 106 F.2d 561; Murphy v. United States, 8 Cir., 39 F.2d 412; Vause v. United States, 2 Cir., 53 F.2d 346; Chicago & N. W. R. Co. v. Kelly, 8 Cir., 74 F.2d 31; United States v. Dilliard, 2 Cir., 101 F.2d 829; Morgan v. Sun Oil Co., 5 Cir., 109 F.2d 178; Hartford Accident & Indemnity Co. v. Baugh, 5 Cir., 87 F.2d 240; Maryland Casualty Co. v. Reid, 5 Cir., 76 F.2d 30.

■ There was a significant question as to the contributory negligence of Hall in both accidents. As to the accident of

May 21, there was evidence that it was Hall's responsibility to set the brakes on the cars which broke loose, and that his failure to perform his duty was the proximate cause of that accident. In addition, there was medical testimony that Hall's condition was actually the result of a bone disease and not the result of the accidents in question. Considering all of the testimony, we find no basis upon which to hold the award inadequate.

Juries are not required to believe every expression of opinion by an expert or any other witness. Upon a full review of the record, we find no basis upon which to hold that there was not substantial evidence upon which the jury based its verdict, and it will not be disturbed. Tennant v. Peoria & Pekin Union R'way Co., (1944) 321 U.S. 29, 64 S.Ct. 409, 88 L. Ed. 520; Continental Casualty Co. v. Holmes, (5 Cir., 1959) 266 F.2d 269.

The judgment is

Affirmed.