No. 20807.

JOHN G. REIDESEL, D/B/A REIDESEL TRUCK LINE,
AND RICHARD E. DICKSON *v.* GLENN BLANK.
(407 P.2d 30)

Decided October 25, 1965. Rehearing denied November 8, 1965.

WORMWOOD and WOLVINGTON, PAUL D. RENNER, BRUCE OWNBEY, for plaintiffs in error.

FRANCIS A. BENEDETTI, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

THE parties appear here in reverse order to their appearance in the trial court. We will refer to plaintiffs in error as defendants or by name, and to the defendant in error as the plaintiff.

The controversy arises out of a collision of motor trucks which were being used in hauling grain. The wife of the plaintiff was the driver of one of the trucks and the defendant Dickson, who was employed by Reidesel, was the driver of the other. Plaintiff's wife was killed as a result of the accident. He sought damages for the alleged wrongful death of his wife, and for damage to property. The defendants by their answer denied that they were negligent and affirmatively alleged that any damages suffered by the plaintiff were proximately caused by the negligence of his wife. Each of the defendants filed a counterclaim, that of the employer being based on a claim for damage to his truck, and that of the employee being based on a claim for personal injuries.

Trial was to a jury. After plaintiff rested, defendants moved for a dismissal on the ground that plaintiff had failed to establish a prima facie case of negligence against them, and that the evidence showed that plaintiff's wife was guilty of contributory negligence as a matter of law. This motion was denied. At the close of all the evidence the defendants moved for a directed

verdict, which motion was denied. The jury returned a verdict in favor of the plaintiff in the sum of $20,333.33. Judgment was entered on the verdict and defendants seek reversal by this writ of error.

The defendant Dickson and one Beverly Brown, a 12-year-old girl who was a passenger in the truck driven by plaintiff's wife, were the only two witnesses who were on the scene at the time of the accident. Their testimony is in sharp conflict on material details relating to the accident. Both trucks were heavily laden with wheat and were travelling in a southerly direction on the highway, the defendants' truck being ahead of that driven by plaintiff's wife. The latter truck struck the rear end of the vehicle driven by Dickson. The accident occurred in broad daylight on a bridge that was 20 feet wide and 165 feet long. The point of impact was 38 feet from the north end of the bridge. The road leading to the bridge from the north is 22 feet wide and for a distance of at least a mile and a half traverses hilly ground but does not deviate from a straight line as to direction. Each truck driver knew of the presence of the other upon the highway since their relative positions thereon had not materially changed for several miles.

Plaintiff's Exhibit "C" is a profile drawing of the bridge and the road to the north illustrating the sharp variations in elevation over which one would pass in approaching the bridge from that direction. The defendants' truck stood eight feet in height. A duly qualified engineer testified that a truck of that height at the north end of the bridge would be invisible to one approaching from the north until he had reached the crest of what was referred to as a "knob" in the downward path of a long hill. From this knob to the bridge there is a relatively steep grade to the point of impact, which would make it difficult to bring the heavily loaded truck to a stop. Beverly Brown testified that the defendants' truck was stopped on the bridge; that

"it was just not moving" and that it was in the center of the road. The sheriff of Yuma county, in which the highway is situated, testified that there would have been enough room on the bridge for the two trucks to pass if defendants' truck had not 'been in the center of the roadway.

The foregoing statements concerning the facts do not purport to include more than a 'broad general description of the nature of the accident, and it must be understood that there are numerous details which are not specifically mentioned. No good purpose would 'be served by setting forth in this opinion the many conflicting versions of what happened, from which the jury might legally draw reasona'ble inferences relating to the proximate cause of the tragic accident.

 The jury was properly instructed as to the law applicable to the issues of negligence on the part of the driver of the defendants' truck, and contributory negligence on the part of the plaintiff's wife. We find that there was competent evidence upon receipt of which it 'became necessary for the trial court to permit the jury to resolve the facts. We will not lengthen this opinion by citations to all of the numerous opinions in which this court has held that it is only in the clearest of cases, when the facts are undisputed and it is plain that all intelligent men can draw 'but one inference from them, that the question of contributory negligence is ever one of law for the court. We direct attention to *Swanson v. Martin*, 120 Colo. 361, 209 P.2d 917, in which other cases are cited. The thrust of the argument for reversal is that the trial court should have found as a matter of law, (1) that the defendant driver was not negligent, and (2) that the plaintiff's wife was guilty of contributory negligence as a matter of law. Neither of these arguments is tena'ble, and the trial court did not err in denying the motions of the defendants.

 We have carefully considered other arguments advanced 'by counsel for the defendants as grounds for

reversal of the judgment. We hold that the admission in evidence of Exhibit "K" was not error. Said exhibit was taken at the scene of the accident and showed the body of plaintiff's wife who was killed in the accident. We further hold that the court did not err in refusing to strike the testimony of Beverly Brown. Her credibility as a witness was for the jury to determine. The objection to Instruction No. 13, which covered the subject of damages which are recoverable for wrongful death, was premised upon the proposition that the plaintiff had failed to specifically refer in his complaint to the wrongful death statute. It is argued that Rule 9 (h), R.C.P. Colo., requires a more definite reference to the statute than is contained in the complaint. We find no merit in this argument.

While it is contended that testimony of Victor Clabaugh, an insurance adjuster, concerning the damage to the truck of the plaintiff, was improperly admitted, we find no prejudicial error with regard thereto.

The judgment is affirmed.

Mr. Justice Sutton dissents.

Mr. Justice Schauer not participating.

Mr. Justice Sutton dissenting.

I must dissent because I believe, regardless of the dispute in the evidence as to whether Dickson, as the driver of Reidesel's truck, was negligent, that as a matter of law Mrs. Blank was herself guilty of contributory negligence. Thus, it was error for the trial court to deny both the defendants' motion for judgment of dismissal and their later motion for a directed verdict.

The "conflicting versions of what happened," referred to in the opinion, have only to do with whether the Reidesel vehicle was stopped on the bridge or whether it was moving very slowly, for Dickson admitted he was in the middle of the bridge right-of-way at the time of the collision and the other facts are undisputed.

The important facts showing Mrs. Blank's negligent conduct, however, have been omitted and disregarded by the majority opinion and I therefore feel constrained to recite them in some detail along with the pertinent ones already stated, as follows:

The rear-end collision between the two heavily loaded wheat trucks occurred at 2:15 p.m. about 6½ miles north of Vona, Colorado. The accident took place on a clear day on a bridge that was 20 feet wide and 165 feet long. The hard-packed gravel road, leading to the bridge from the north was 22 feet wide. A profile drawing of the bridge and the road to the north shows a hill crest, a dip, and a small knob with a 6% grade below the rise to the bridge. The small knob is 525 feet north of the north end of the bridge and because of this topographic feature it is physically impossible to see any vehicle between that point and the south end of the bridge until one reaches the top of the knob.

It appears from the testimony of Beverly Kay Brown, a then twelve year old girl passenger in the Blank truck, that the plaintiff's wife, who admittedly had driven over this road many times and was an experienced truck driver, had followed defendant Reidesel's truck at varying distances for approximately eight miles. Because of the number of small hills in the one and a half miles before the bridge, plaintiff's wife had lost sight of defendant's truck. As the Blank truck came over the crest of the hill going south no vehicle could be seen in front of her on the road; however, when her truck came to the top of the small knob, Mrs. Blank saw Reidesel's truck in the middle of the road on the north end of the bridge, either stopped or moving slowly — depending on whose version of the accident one believes. Plaintiff's wife immediately applied her truck's brakes but could not stop in time to prevent ramming the rear of the other truck on the bridge. The force of the collision mashed the Blank truck's engine and cab into a compressed tangle of metal, killing the driver and injuring

her passenger. Both vehicles were forced across the bridge and came to rest 320 feet from the point of impact according to a state patrolman who investigated the tragedy. Mrs. Blank's truck laid down 269 feet of skid marks prior to striking the other vehicle. There was no precise testimony as to the speed of the Blank vehicle at the time of the impact but the passenger testified that Mrs. Blank had been driving at speeds of from 20 to 30 m.p.h. at the slowest and up to 40 m.p.h. at times. As she recalled, their speed was about 20 m.p.h. when they got to the top of the hill.

C.R.S. '53, 13-4-33, which was applicable to the situation before us at the time, states in pertinent part:

"Speed limits. — (1) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing.

"(2) * * *

"(3) The fact that the speed of a vehicle is lower than the foregoing prima facie limits shall not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, or when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions, and speed shall be decreased as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."

"* * *"

The above statute provides that "* * * speed *shall* be decreased as may be necessary to avoid colliding with any * * * vehicle, * * *." (Emphasis supplied.) This is the law in Colorado and this court should not attempt to qualify it by allowing a jury to apply a reasonable man standard to it. Cf. *Nikoleropoulos v. Ramsey*, 61 Utah 465, 214 Pac. 304 (1923). The legislature, in effect,

has decided what a reasonable man will do and we are bound by that determination. And, independently of statute, it is negligence as a matter of law for a person to drive an automobile upon a traveled highway in such a manner and at such a rate of speed so that the vehicle cannot be stopped within the distance at which the driver is able to see objects upon the highway in front of him. *Union Pacific v. Cogburn,* 136 Colo. 184, 315 P.2d 209 (1957); *Ridenour v. Diffee,* 133 Colo. 467, 297 P.2d 280 (1956).

Here Mrs. Blank could not stop in time to avoid the accident even though she had over 500 feet in which to act and laid down 269 feet of skid marks in trying to stop. The entire circumstances of this case, where an experienced truck driver knew the road, knew there was another truck ahead of her, knew the narrow wooden bridge lay at the foot of the hill and should have known how long it would take to stop her truck if she had to, show a reckless and almost willful disregard of the rights of others. In my opinion, her conduct was at the very least a proximate cause of the accident. This is true regardless of whether the other vehicle was stopped or moving or was in the middle of the right-of-way on the bridge or whether its driver was also guilty of negligence. To me only one reasonable inference can be drawn from Mrs. Blank's conduct, which inference made the question one of law for the court.